<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SUSAN JACKSON, | : | **Hon. Susan D. Wigenton** |
| Petitioner, | : | |
| v. | : | Civil No. 08-1575 (SDW) |
| MICHAEL CHERTOFF, etc., et al., | : | <u>OPINION</u> |
| Respondents. | : | |

**APPEARANCES**:

    SUSAN JACKSON
    A240 92 722
    Monmouth County Correctional Institution
    1 Waterworks Road
    Freehold, New Jersey 07728
    Petitioner <u>Pro Se</u>

    JORDAN M. ANGER, ASSISTANT U.S. ATTORNEY
    CHRISTOPHER J. CHRISTIE, U.S. ATTORNEY
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

<u>WIGENTON</u>, District Judge

    On March 31, 2008, Susan Jackson filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging her detention in the custody of the Department of Homeland Security ("DHS"). Petitioner challenges her detention as not statutorily authorized and in violation of due process guaranteed by the Fifth Amendment on the ground that the Immigration Judge twice granted her application for cancellation of removal. She seeks an order directing the DHS to

release her from custody.  On May 19, 2008, Respondents filed an Answer seeking dismissal of the Petition, together with several certified documents.  On May 30, 2008, Respondents supplemented the Answer.  Having thoroughly examined the parties' submissions, this Court will dismiss the Petition, without prejudice to the filing of a petition after November 29, 2008, in the event that Petitioner's removal to the United Kingdom is not reasonably foreseeable.

## I.  BACKGROUND

Susan Jackson challenges her detention at Monmouth County Correctional Institution by the DHS.  The facts are not in dispute.  Petitioner was born in the Cayman Islands on October 1, 1967, and entered the United States on June 4, 1968.  On June 15, 1981, Petitioner was granted lawful permanent resident status.  In March 2005, pursuant to a guilty plea, Petitioner was convicted of attempted petty larceny in Kings County, Brooklyn, New York.  On April 25, 2006, she was convicted, again pursuant to a guilty plea, of petty larceny in Kings County, Brooklyn, New York.

On March 12, 2007, the DHS took Petitioner into custody pursuant to an arrest warrant and a notice to appear charging Petitioner with removal as an alien who has been convicted of two or more crimes involving moral turpitude, pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii).  On June 26, 2007, Immigration Judge Alan A. Vomacka in New York, New York, determined that Petitioner was removable on the ground that she was convicted of two crimes involving moral turpitude, but granted Petitioner's application for cancellation of removal pursuant to 8 U.S.C. § 1229b(a).  The DHS appealed.  On December 5, 2007, the Board of Immigration Appeals sustained the appeal in part and remanded to the Immigration Judge for further factfinding and consideration of Petitioner's application for cancellation of removal.  On February 21, 2008,

Immigration Judge Vomacka again granted Petitioner's application for cancellation of removal. The DHS filed a timely appeal on February 25, 2008. On May 29, 2008, the Board of Immigration Appeals sustained the DHS' appeal, vacated the Immigration Judge's February 21, 2008, order granting cancellation of removal, and ordered Petitioner removed to the United Kingdom.

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of the DHS at the time she filed her Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and she asserts that her detention is not statutorily authorized and violates her constitutional rights.  See Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005) (recognizing that the Real ID Act did not eliminate district court habeas jurisdiction over alien's challenge to detention).

B.  Legality of Detention

The Immigration and Nationality Act ("INA") authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on

whether the alien is to be removed from the United States. See 8 U.S.C. § 1226(a). Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . ." 8 U.S.C. § 1226(a). Section 1226(c) mandates detention during removal proceedings for a limited class of criminal aliens. See 8 U.S.C. § 1226(c)(1)(B).[1]

---

[1] Specifically, § 1226(c) provides:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>
>> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>>
>> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (d) of this title,
>>
>> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>>
>> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to

(continued...)

In <u>Demore v. Kim</u>, 538 U.S. 510 (2003), the Supreme Court upheld the constitutionality of § 1226(c), and ruled that mandatory detention of criminal aliens during removal proceedings is a constitutionally permissible part of the removal process.  "[T]he statutory provision at issue governs detention of deportable criminal aliens *pending their removal proceedings*.  Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  <u>Id.</u> at 527-28.

Once an alien is ordered removed, the Attorney General is required to remove him or her from the United States within a 90-day "removal period."  <u>See</u>  8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period').")  8 U.S.C. § 1231(a)(1)(A). Significantly, § 1231(a)(2) requires the Attorney General to detain an alien during the 90-day removal period:

> During the removal period, the Attorney General shall detain the alien.  Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible

---

[1](...continued)
> provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

> under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2).

If the DHS does not remove the alien within the 90-day removal period, then § 1231(a)(6) authorizes the Attorney General to thereafter release or continue to detain the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." <u>Zadvydas</u>, 533 U.S. at 689. However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." <u>Id.</u> at 699. To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention. <u>Id.</u> at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period

of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

In 2005, the Supreme Court ruled in Clark v. Martinez that the post-removal-period detention of two inadmissible aliens from Cuba who had not effected "entry" was no longer statutorily authorized by § 1231(a)(6) because removal to Cuba was not reasonably foreseeable. See Clark v. Martinez, 543 U.S. at 384. The aliens "were detained well beyond six months after their removal orders became final," and the government "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba)." Id. at 386. Under those circumstances, the Court held that the petitions should have been granted. Id.

In this case, Petitioner challenged her detention on the ground that the Immigration Judge granted her application for cancellation of removal and did not order her removed. However, on May 29, 2008, the Board of Immigration Appeals overturned the Immigration Judge's order granting cancellation of removal and ordered Petitioner removed to the United Kingdom. Given the May 29, 2008, decision of the Board of Immigration Appeals removing Petitioner to the United Kingdom, her detention at this time is statutorily required by 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien"). This is because the 90-day removal period began on May 29, 2008, when the order of removal became administratively final. See 8 U.S.C. § 1231(a)(1)(B)(ii). Specifically, § 1231(a)(1)(B) provides that

> [t]he removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.

>(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
>(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section (i) applies here, as nothing before this Court indicates that Petitioner's removal order is being judicially reviewed by the United States Court of Appeals for the Second Circuit or that the Court of Appeals ordered a stay of Petitioner's removal. Thus, under § 1231(a)(1)(B)(i), Petitioner's removal period began on May 29, 2008, and will continue for 90 days. Because the presumptively reasonable six-month period to effectuate Petitioner's removal will not expire until November 29, 1998, at the earliest, this Court will dismiss the Petition as premature. <u>Id.</u> However, the dismissal is without prejudice to the filing of another petition in the event that, after the expiration of the presumptively reasonable six-month period, there is no significant likelihood of removal in the reasonably foreseeable future.

### III.  CONCLUSION

The Court will dismiss the Petition without prejudice to the filing of another petition in the event that, after the expiration of the presumptively reasonable six-month period, there is no significant likelihood of removal in the reasonably foreseeable future.


/s/**SUSAN D. WIGENTON, U.S.D.J.**

DATED: JUNE  20, 2008